May it please the Court, Your Honor, Stuart Peck for the appellants. The summary dispositions rendered by the FDIC and the ALJ were Before we get into the primary issues, one of your issues is contesting the ruling on the motion to reconsider based on supposedly discriminatory comments made by someone affiliated with the FDIC in investigating. This is on petition for review from the FDIC, and you filed a petition for review from the underlying judgment or ruling, order, whatever. I didn't see a petition for review from the denial of the motion to reconsider, and I question that we even have jurisdiction to review that point in the light of no petition for review having been filed contesting that. I note the FDIC fails to point that out, but again, you know, we decide our jurisdictions sua sponte, so tell me why I'm wrong. Well, Your Honor, the way the statute reads is that we filed our petition for review, but the FDIC still can amend and change their orders, and then they didn't. We filed the motion, and then they overruled it, and we raised it as an issue on this appeal, Your Honor. But you didn't file a separate petition for review from that ruling. It was like in, say, immigration matters. If a party files a motion, an appeal with the BIA, and the BIA denies the appeal, and then they file a subsequent motion to reconsider, a new petition for review is required to challenge that denial of the motion to reconsider, and I'm just, I haven't researched this other than questioning whether we have jurisdiction. So, do you have any authority to tell us why you're not required to file a separate petition for review on this subsequent denial of motion to reconsider? I don't have it right offhand, Your Honor, but I would say it's implicit in our petition for review, going to the basis upon which the summary judgment was granted, and the fact that it was based on the examiner's affidavits, and it turned out those examiners exhibited bias. This issue is also before the Court in two other appeals, the one in the cease and desist and recently . . . You know, that's the whole problem here. You're not on appeal unless you're talking about from a district court. You're here on a petition for review from an administrative, from a governmental agency. There is an appeal on a district court of free enterprise with Judge Feldman, who saw all this evidence and noted that this is, these are serious allegations that require judicial scrutiny. I do believe it's subsumed and it's implicit in our petition for review as to . . . If a review, if under the rules, and I checked the FRAP rules and the FRAP rule for A4BI, which talks about on appeals that once a judgment is filed and you file a notice of appeal, if a subsequent ruling comes down, it's covered by that first notice of appeals. FRAP rule 20 says it doesn't apply to, for a petition for review, that that rule doesn't apply to them. And again, we'll just have to research this, but I think it's a question. I don't think there's anything on it, Your Honor, and the rules do provide the FDIC until the records filed in this matter can reconsider its order, you know, that's under rule 1818. May move, I'm going to move on. Before we get to the merits, though, I had a related question in terms of what you're saying. Are you — did you present notice separately that the ALJ here had refused you an opportunity to present evidence? Is that a discrete and separate issue before us? That is an issue we have raised. Can you notice that for appeal? Yes. Yes. The summary dispositions, the evidentiary presumption, that is definitely on appeal here, Your Honor. Okay. What's your best authority that the Court had to consider something submitted after the summary judgment? Well, there was — there was all sorts of things before the summary judgment. There was joint stipulation of facts in the record that was — that was thought — I know, but is there any authority for the material submitted that — the exceptions that were submitted on time late? What's the — your best authority the Court had? Oh, my — my — the exceptions we did to the FDIC? Well, the FDIC — and I — the FDIC has authority under Section 308 of 14, allows the Board to modify the filing dates. Yes, it does. But what's the authority they abuse discretion if they don't? Is that — or is that not an argument you're making to us? I'm not making an — they've accepted. They have an ability to — to waive their rules, to waive the requirement of it to being within 30 days, which they did. And I don't — that's not jurisdictional. And I thought of that issue, and they have — there are many rules. It's 308-12. I think 308-14 allows the Board of the — On your merits argument, start with the standard of review. If these — if the whole set of issues are properly presented to us — Well, they are properly — Are we looking as to whether there's substantial evidence for these monetary penalties? Is that what we're asking? No, we're looking at substantial evidence for, first of all, the summary — first of all, the summary disposition was wrong as a matter of law. Second of all, there was no factual basis for them to say there was a need — they're wrong as an issue of law. There was no requirement for current appraisals. And they're absolutely wrong when they pulled out a whole from nothing the fact that there was change in market conditions. Well, I guess what would help me most is your best authority, any circuit, as to whether we're reviewing just to ask whether there's substantial evidence to support the penalties or whether we're reviewing to inquire if there's just any material issue of fact. I've cited in our brief, Your Honor, but you look at the — they apply the summary judgment standards on these summary dispositions. And can you think of the case that clarifies that distinction, or you don't even think that is a relevant distinction? There are cases cited in there that we cite that the summary disposition is tantamount to a summary judgment. But what's important is there was under — as a matter of law, under — and cited in our brief, and I pulled out the — which is really great, is under the ROE, the examiner has put in the record, along with a joint statement of facts, the examiner says you don't need current appraisals. And under 12 CFR 323.3, it says you don't need a current appraisal if the loan is under $250,000, and you don't need a current — You're jumping to the Director Kaye. Director Kaye. I'm on Director Kaye. I'm sorry. We're on Director Kaye. And the fact this is a collateral-based loan, and the FDIC and ALJ said no current appraisals, okay, you have to have a current appraisal, and the market conditions have changed. They were wrong as a matter of law because the own regulation says you don't need a current appraisal for loans under $250,000. There was a 2009 loan for $75,000. You don't need a current appraisal when you have an extension of existing credit. Okay? There was 2006 and 2007 appraisals in the file there. And the issue is, is the — does the loan present more than a normal risk of nonpayment? Right. And it seems undisputed that his credit history was very problematic at best. But — but — Just as a fact, the credit history. That's correct, Your Honor. But — And then is it also correct he wasn't current in his payments? There was no present ability to pay. So if those two facts are correct, then this — your argument for reversible error turns entirely on the collateral issue. On a collateral-based loan. And that happens all the time. That's what this is now. Lenders make collateral-based loans all the time in REM loans because the collateral is sufficient. They make loans in REM without recourse. They make loans if I'm a plaintiff's attorney. You — it would just — I mean, I'm no great financier, but it would seem to me that the rule can't be that any appraisal, however old — if the only appraisal they've got is 10 years previously as to the condo, that would suggest more than a normal risk of nonpayment if it's entirely a collateral-based loan. That is — that may be correct, Your Honor, but the rule says provided that market conditions don't change. And if you have an appraisal within a year or two of the loan, and the market conditions have stayed the same, and you're the bank's board and knows that, OK, that's good. But what they did, the big — Market conditions, as the government points out, we'd had — we'd gone through the economic downturn in 08, 09. But it's — It's just booming here in New Orleans after Katrina, but you don't come to grips with the economic downturn. And, again, it gets back to Judge Higginson's question, which I also have, that, you know, normally we look for an arbitrary and capricious ruling. We look for substantial evidence. Here, because it was a summary disposition, arguably review is de novo. And I'm not quite sure how that — how those two interact. Well, de novo, we never had a chance to go forward to point out — we did. There was nothing in the record, absolutely nothing, about change of market conditions. And I submit to the court that this — this residence is five blocks from this court — Counsel, are you saying that they found that a current appraisal was a requirement for the loan? I believe they did. They said there was no current appraisal. And the law says you don't need a current appraisal. Well, but to say that there was no current appraisal is to suggest that it may be prudent to get one. And — and — and it's appropriate for them to look at the risk they're taking in terms of repayment of the loan. Isn't that correct? But — but the — the board looking at a prudent lender would say, I have an appraisal that is within a year or two, that nothing's changed on it, and the statute says you don't need — the regulation says you don't need to have one unless market conditions have changed. But the lack of a current appraisal is an appropriate factor to consider in terms of a borrower repaying. You don't agree with that? I — it's a combination of many factors. But — Right now, I'm only asking you about one. And the one I'm asking you about is the lack of a current appraisal. Are you saying you do not agree that a prudent lender should look at the age of an appraisal, that it's prudent to look at that and consider that factor when evaluating the risk of repayment on the loan? I think you should look at it to see how old it is. And — but the FDIC in its regulation says you can use one as long as market conditions don't change, if it's within reasonable time. Why would they put that? They're also seeing that he's habitually late. And they're also seeing he doesn't have current assets to repay. So if it's a multi-factor test, they've got every warning flag up, and then they don't have an immediately current appraisal. Hard to see that that would be — fail this more than a normal risk. And then the affidavits that you submitted in opposition summary judgment were just two paragraphs long, and it essentially said, we knew him. And Katrina had hit, and he's a lawyer. And so, in the end, he repaid it. But — but the ALJ did not look at the joint stipulation of facts that was also submitted that would have — that supplemented those affidavits that showed that the appraisals are in there. There was a 2011 appraisal that happened within a year, and it showed the market value stayed the same. There was a fact that was repaid. I know you look at the time of the loan. Is that an independent appraisal? Pardon? Is that an independent appraisal? Yes, that was an independent appraisal, a certified appraisal. So you had the appraisals before, the appraisals after, the knowledge of market conditions not changing, because the FDIC and ALJ said, oh, market conditions changed because of the — what happened in the United States. But down here, things hadn't changed. Things were doing better at that time. And you look at the local marketplace. Now, the summary disposition was not proper as to Director Kaye's loan. It also was wrong as the Officer Peay loan. The Officer Peay loan, the FDIC has created some sort of presumption, and it's really against — Well, let's start with the regulation. Officer Peay was the vice president. Correct. All right. And the regulation says what happens as regards the vice president, doesn't it? Yes, it does. And then it says unless the officer is excluded by resolution of the Board of Directors, we don't have that here. We do not. But that says considered — Or by the bylaws of the bank or the company. We don't have that here. No, we don't. But it's considered — So he was the vice president. But he was the vice president, but the definition above doesn't say you have to have a resolution. It just says, does he participate, was authorized to participate. And the statute is in the disjunctive. It talks about participates or has authority to participate in the affirmative. The FDIC now makes it a per se that you could be an officer, even though the statute in the footnote says, you know, titles don't matter, and if you don't have a resolution, tough luck, you're an executive officer, even though you never participated and you didn't have an authority to participate. FDIC spins some negative when the statute's affirmative. And it's contrary to the statute. It's contrary to the footnote. It's contrary to the use of the word considered. It's contrary to the rulemaking authority that had deemed and changed it to considered. It's not — it's not entitled to Chevron deference in this case. It was just wrong. And they should have gone to a summary disposition to see what this officer did and participated in. What was the evidence of his limited authority? The evidence was he — but the affidavit, the board said, the board members, all the board members said he had no authority to participate and he did not participate. But your argument here isn't that you have a material issue of fact. You're saying they've misinterpreted the law. They have misinterpreted the law, and it should have gone to a hearing on his authority or authority or his actual participation. That's what the statute, 375B, says. That's what it looks at. It's disjunctive, and it has to be affirmatively of — say he can participate. Not what the FDIC makes of the negative. And FDIC goes against the whole text and all the different wording and all the different provisions because the definition of an executable officer does not have what they interpreted. Thank you. I reserve the time for questions. Good morning, and may it please the Court. My name is Minodora Vencia, counsel for the FDIC. Sure. I will start — Can you hold that a little closer to you because I don't think in the back anybody can hear this. Okay. So I will — Turn the volume up, maybe? Thank you. I will start with the issue about the value of the collateral. No, I want you to start with the issue about whether a separate petition for review was required to challenge the ruling on the motion to reconsider. Your Honor, the FDIC's rules do not provide for motions for reconsider. So I am not aware that somehow the record were still open or it could have been provided. We would want to do more research on that, and if you don't mind, submit a 28-J letter. This is something new for us because we don't usually allow motions for reconsider. It is not part of our rules. We do allow its motion to reopen the record, and those are delegated to the executive secretary to decide. And here, they try to introduce new evidence of the discrimination — alleged discrimination issue, and that's why we treated it as a motion to reopen. But in general, I agree with your — I'm going to ask Judge Graves whether he's going to let you file a separate letter brief. If it's helpful to the court. I'm going to ask Judge Graves about a necessary new petition for review to be filed by the petitioner. We're happy to do it if the court wants it, but we don't need to do it. Permission granted. Great. Thank you. So, on the issue of the collateral — Before you get there, I'd really love this threshold question of the standard of review. Do you accept that it's a summary judgment standard, or do you — There are two different standards, right? One is for the summary disposition on whether there was a regulation or violation. And on that, I feel — because there are pure issues of law, given the undisputed facts on some of them, that the standard could be de novo. But on the penalties, whether the penalties were excessive, that's arbitrary and capricious. Well, not penalty excessive. Whether or not they presented below a material issue of fact as to whether or not — especially Director Kaye's loan. On whether the loan for violations of Reg O, I think we've probably given the summary disposition standard here is probably de novo. But they also raised a separate issue in their brief on whether the penalties were excessive. And on that, it would be arbitrary and capricious, we believe, review. So there are two different standards for the two different issues. So, going back to the value of the collateral, they said that the market had not changed, that under the FDIC's regulations, you're only required to get new appraisals if the market conditions change. And here, the market hadn't changed. But actually, the evidence in the record, there was a letter from Director Kaye himself saying that the reason why he's providing additional collateral in addition to the loan on his residence was because the market was soft. So there was an admission in the record that the market conditions had changed. And, I mean, this is common sense that everybody knew that the market conditions had changed. And if they really hadn't changed, it wouldn't have been that hard to get a new appraisal showing that the market hadn't changed. But if you look at the evidence that they tried to introduce in their motion to reopen, one of them is the order of prohibition against Director— Wait a minute. Their motion to reopen or their motion to reconsider? It's called to reconsider, but they're trying to introduce new evidence. The evidence they sought to introduce on this motion to reconsider had to go to their claim of discrimination. Sorry, one of the evidence was on discrimination. Another part of the evidence was the order of prohibition against Director Kaye. He was excluded for banking because of what transpired in this case and another case in which— I don't believe that's raised on this petition we're reviewing now, is it? No, no. But all I'm saying is it's in the appendix, appellate appendix. And on one of the documents there is the order of prohibition, and it shows that in September 2007, the value of the property had already dropped by $100,000. The appraised value was $785,000. So the latest appraisal they had here was from February of 2007 when the value was $875,000, but six months later it had already dropped $100,000. So given that it was not any error for the board to conclude that they needed to get a more recent appraisal, that it was imprudent to make this loan without having a more recent appraisal. So the FDI position isn't that collateral alone would never suffice to make the risk normal? Actually, there is case law for that proposition that collateral alone was not sufficient, and there is a 2006 interagency policy that— What's the strongest case for that proposition, and is that a position you're urging us to make here? I don't think you need to reach that conclusion because the inadequate documentation on the value of the collateral together with the borrower's inability to repay his debt exceeded his income. That's the multi-factor analysis. Exactly. I don't think you need to— What's the authority? What's the authority? Yes. So it's an interagency policy— I thought you said case law. Well, it's been pronounced by all the agencies saying that it's unsafe and unsound to make collateral— But the FDI court adopted the notion that there would never be a normal risk if the loan were based on collateral alone. Let's assume even over collateral loans. Well— The bank says, we'll give you the loan because we've ascertained your current appraisal for collateral exceeds the loan. You're still saying that you could premise a violation on that? Yes, Your Honor, because banks are not supposed to make loans to foreclose on them. The purposes of the loans is to be— That's a separate question than whether it presents more than normal risk of non-payment. I think I just argued a case that I won in the Ninth Circuit in which there was an inadequate— the borrower, they did not verify his ability to repay. It was a low-doc loan, and there was actually collateral, and there was a take-out commitment because it was a construction loan, and the court agreed that it was unsafe and unsound. That has no presentability and past credit, sort of, that alone. Because the collateral alone, and even with a take-out commitment, wasn't sufficient. If the borrower has an inability to repay, that's a primary consideration. That's why loans are made. It's for a borrower who has the ability to repay. The only exception— If you won that case in the Ninth Circuit, what's the citation? I can send it to you. It's Haynes v. FDIC, but I don't—I think it's unpopular. It's not even a useful site. I just won it in August. August. Yes. So I argued in August. It might have been published—reissued in this September, but it's unpublished. But the interagency policy to which this court can defer says, institutions should avoid the use of loan terms and underwriting practices that may heighten the need for a borrower to rely on the sale or refinancing of the property. Loans to individuals who do not demonstrate the capacity to repay from sources other than collateral pledge are generally considered unsafe and unsound. And this was a policy issued by all banking agencies in 2006. The only exception is for reverse mortgages, and those are a special exemption where there is—for most of them, there is HUD insurance. So there is another guarantor on top of the collateral. Briefly, on the Officer P issue, the regulation states that vice presidents are considered executive officers unless two conditions are met. It is not disjunctive. It's a very clear and. One condition is that they do not actually participate in policymaking. This is the evidence they try to introduce, and we do not dispute that they try to introduce this evidence, and it might have satisfied one of the conditions, but the other condition that he be excluded from policymaking by the bylaws or board resolutions, they do not dispute that the bylaws or the board resolutions do not exclude him from policymaking. So for that reason, it was proper as a matter of law for the board to decide that he was an executive officer. Unless the Court has any other questions, we ask that the decision below be affirmed. Thank you, Counsel. Thank you. Lotto. There was nothing in the record on change of market value, and our own regulations require that. They made a judicial notice on nothing that market conditions had changed. They hadn't changed in New Orleans, and there was no basis for that judicial notice. I'm curious, where will we find in the record, and again, we don't, I know you don't file record excerpts. We've got this big administrative record. Where are we going to file what counsel for the FDIC just said about Director Kaye's own admission that the market was soft? There was a statement he wrote someplace. It did say something about the market, but there was absolutely no basis for them to say there was a change in market conditions. There was nothing in there. There was no value recited in the FDIC's affidavits. There was no mention of change of market condition. The bank board is right here five blocks away, knows New Orleans, knows what happened to Katrina, knows that this whole neighborhood, this is the same neighborhood the court's in, was doing exceptionally well. In fact, it was borne out by a 2011 appraisal right afterwards that said that came the same market conditions, and it was cited in the record how things, this is a very vibrant neighborhood, Your Honor. That's the big issue right there. There's no evidence there, and again, this is a summary disposition. We never had a chance to put on evidence to talk about the market conditions. He just, the ALJ, it wasn't a summary disposition, it was a summary execution. He made up his mind. He was ready to give a summary disposition and not allow us to put on any evidence when it was clear there was nothing in the record to support his judicial notice. It's a thoughtful, thorough ALJ opinion. But there are critical, there's critical errors in there. The statement that you have to have a current appraisal goes against the own regulations of the FDIC, says you don't need one for under $75,000, and you don't need one when you extend a loan, such as we did here, okay? So he failed to even look at the law here, and FDIC didn't look at their own law. Now the examiner made mention of that, and that was on, I believe, Exhibit 15, tab 16, someplace that was submitted in our opposition, that he even said in his report of examination 2010, you don't need current appraisals unless the property changes or there are changes in market condition. That was a big error, I believe. It was a big error to make that judicial notice with no basis on the change in market condition, and it was a big error by the FDIC, where I think they misread and conflated this Court's bullion decision that says it's a per se rule. If you don't have available cash flow, it's a Reg O violation. And the cases she's talking about are safety and soundness cases. They're not Reg O cases. There's nothing in Reg O regarding current appraisals. So she's taking cases that are in safety and soundness that don't apply in the circumstances. I do Chapter 11 bankruptcy. People come in all the time and make debtor-in-possession financing loans, and they make it on the value of the collateral, not the credit, not the repayment, the value of the collateral. If I am a plaintiff's attorney and I have a practice and I invest in my cases, I don't always, my case, my income goes up and down, but I have a million dollars of Exxon stock with a basis of $50,000. I don't want to take the tax hit on that. So I pledge that stock to the bank, and they give me a loan for $600,000. That collateral-based loan. My credit might not be great. I might not have available cash flow. But under those circumstances, there's no more than a risk of repayment there. You've got to look at the collateral. And they didn't look at the collateral. This was a collateral-based loan. And that's the problem here. Now, on the Officer P matter, they just misread the statute. They misread, they created an irrebuttable presumption where the statute itself, where the congressional intent is either you participate or you have authority to participate. They have taken one line out there and said, well, it's an irrebuttable presumption. If you don't have a resolution, it doesn't, if you have a title vice president, you're executive officer. Even though you don't participate. Even though the bank's board did an affidavit saying he had no authority to participate. So that's the misreading of that. It goes against congressional intent. And that's why it's wrong, and they're not entitled to Chevron deference. Now, on this 1818 issue, the FDIC, under 1818, we have 30 days we have to file a petition for review. But until the record's filed, they can modify or change their order. And that's what we did. But it's all within our petition for review, because our petition for review goes to the credibility of these examiners, which were biased. Thank you.